**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SHANTA BUCKLEY, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:09-CV-2869-RWS |
| OFFICER J. M. FUTO, : | |
| individually : | |
| : | |
| Defendant. : | |
| : | |
| : | |

## ORDER

This case comes before the Court on Defendant Officer J. M. Futo's Motion for Summary Judgment [22] and Motion for Leave to File Excess Pages [22]. After considering the record, the Court enters the following order. As an initial matter, Defendant's Motion for Leave [22] is granted *nunc pro tunc*.

## Background

Defendant, a Cobb County Police Officer, was dispatched to an apartment complex to investigate a fight at approximately 3:00 a.m. on October 5, 2008. (Defendant's Statement of Undisputed Material Facts ("DSUMF") Dkt. [22-2] at ¶ 1). Through the course of investigating the incident, Defendant was

AO 72A
(Rev.8/82)

informed that Plaintiff was possibly dating one of the suspects involved in the fight. (Id. at ¶ 10). Defendant began questioning Plaintiff. (Id. at ¶ 11). Through the course of Defendant's questioning, he concluded that Plaintiff was providing misleading, if not false, answers. (Id. at ¶¶ 14, 17-19).

Defendant attempted to continue questioning Plaintiff while another officer questioned Plaintiff's mother, however Defendant alleges that Plaintiff became increasingly agitated and tried to interrupt the other officer's questioning of her mother. (Id. at ¶¶ 20-21). Plaintiff disputes this point, stating that Defendant cursed at her, she attempted to end the interrogation and return inside, and Defendant pushed her against the wall to prevent this from happening. (Dkt. [30] at p. 3). At this point, Plaintiff became openly disruptive, according to both officers on the scene, as she yelled at the police officers and refused to leave the apartment where the other officer had been questioning her mother prior to Plaintiff's interruption. (Dkt. [22-2] at ¶¶ 22-25). According to Defendant, as a result of this disruption, Plaintiff's increasingly agitated behavior, and the fact that he believed Plaintiff had given misleading information about the suspect involved in the fight, Defendant arrested Plaintiff for obstruction of justice. (Id. at 22-27). In handcuffing Plaintiff, Defendant described pushing her against the wall to handcuff her because she was

2

pregnant, rather than following the normal procedure of putting an arrestee on the ground. (Id. at ¶ 25). Plaintiff and Defendant disagree about the manner in which she entered the police car, but it appears from both sides that Defendant forcefully placed Plaintiff into the car. (Id. at ¶ 29; Dkt. [31-1] at ¶ 29). After arriving at the station, despite refusing medical attention, Plaintiff was escorted to the hospital to check on the health of her baby. (Dkt. [22-2] at ¶ 30). While at the hospital, Plaintiff again refused medical treatment for herself. (Id. at ¶ 31).

Plaintiff appears to be alleging federal claims under 42 U.S.C. §1983 seeking redress for Defendant's alleged constitutional violations of false arrest and use of excessive force. Additionally, Plaintiff appears to allege a state law claim of false imprisonment against Defendant.

## Discussion

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion,

3

and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587(1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## I.   Qualified Immunity and Plaintiff's §1983 Claims

In bringing his motion for summary judgment, Defendant argues that not only was there no constitutional violation in his arrest of Plaintiff, but that he is entitled to qualified and official immunity under federal and state law, respectively.

Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. See Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law for the court.

5

Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).  The plaintiff opposing summary judgment has the burden of showing that there is a genuine dispute of material facts.  Id.  It is not enough that plaintiff produce evidence which would allow a fact-finder to find that the defendant was in reality wrong about the facts, but the plaintiff must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.  Id.

The qualified immunity analysis consists of a two-step analysis.  First, the court addresses the threshold question of whether the facts as alleged, viewed in the light most favorable to the plaintiff, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does the court proceed to the second step to determine whether that right was clearly established.  Id. To determine if qualified immunity attaches to Defendant, the Court must discern if the facts as alleged amount to a violation of Plaintiff's Fourth Amendment protection against false arrest and use of excessive force.  If the Court finds that there are not sufficient facts to establish a violation, then qualified immunity applies to Defendant, protecting him from Plaintiff's federal civil rights claims under 42 U.S.C. §1983.

### A.     False Arrest Claim

Plaintiff alleges that Defendant violated her Fourth Amendment rights against false arrest. In order to defeat an allegation of false arrest, an officer must show that he had probable cause to believe the individual has committed even a very minor criminal offense in his presence in which case, he may arrest the offender without violating the Fourth Amendment. Lee, 284 F.3d at 1194-95 (quoting Atwater v. City of Lago Vista, 532 U.S. 318 (2001)).  However, in order to receive qualified immunity protection, "an officer 'need not have actual probable cause but only arguable probable cause.'" Holmes, 321 F.3d at 1079 (quoting Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)).  Arguable probable cause exists if an officer reasonably could have believed that probable cause existed in light of the information the officer possessed. Id. When applied to the Lee standard for determining if there was a Fourth Amendment violation, Defendant must show that he reasonably could have believed, in light of the information he possessed, that Plaintiff had committed a criminal offense (even a very minor one) in his presence so as to show Defendant arrested Plaintiff without violating Plaintiff's Fourth Amendment right. There appears to be a material issue of fact as to the events that transpired while Officer Futo was questioning Plaintiff when she tried to walk away. (Compare Dkt. [22-2] at ¶¶

7

19-21 with Dkt.[31-1] at ¶¶ 19-21). However, even with such a material dispute, because Plaintiff provided Officer Futo with what he believed to be inaccurate and incomplete information about a suspect he was investigating, Officer Futo could have reasonably believed, in light of the information he possessed, that Plaintiff intended to obstruct his official investigation. (See Dkt. [22-2] at ¶ 14; Dkt. [31-1] at ¶ 14). Pursuant to Lee and Atwater, Defendant had, at the least, arguable probable cause to arrest Plaintiff for committing the misdemeanor of obstruction of justice in his presence. See O.C.G.A. § 16-10-24(a). For the purposes of the motion at hand, since Defendant reasonable concluded that Plaintiff mislead him, there was at least arguable probable cause for Defendant to arrest Plaintiff. Therefore, there is no constitutional violation as to Plaintiff's arrest. As there is no constitutional violation, Defendant satisfies the first prong of Saucier and thus, has qualified immunity from Plaintiff's §1983 claim for false arrest. Saucier, 533 U.S. at 201.

### B. Excessive Force Claim

Plaintiff also alleges that Defendant violated her Fourth Amendment rights by using excessive force as he arrested her. Again, to determine if Defendant is protected by qualified immunity, the threshold question is whether there was a constitutional violation. Id. "The Fourth Amendment's freedom from

8

unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197 (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)).  To determine whether the amount of force used by an officer is proper, the court considers whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Id.  "The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). This is a fact intensive inquiry that must be made on a case by case basis from the perspective of a reasonable officer at the scene, not from 20/20 hindsight. Id.  Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.  In order to balance the need for some use of force with an arrestee's constitutional rights, the court must evaluate several factors including: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight. Lee, 284 F.3d at 1197-98.  The use of force by a police officer must be reasonably proportionate to the need for the force.  Id.

9

The case at hand is one of de minimis force and injury as Plaintiff chose not to accept offered medical attention following the arrest. (Dkt. [22-2] at ¶¶ 30-31). The Eleventh Circuit has held that a de minimis application of force will not support a claim for excessive force under the Fourth Amendment. See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding that where a police officer grabbed the plaintiff, shoved him a few feet, pushed his knee into the plaintiff's back, placed his head against a van, searched his groin in an uncomfortable manner and then placed him in handcuffs with a facial fracture and blunt trauma, the actions did not amount to unconstitutional use of excessive force under the Fourth Amendment). Plaintiff alleges that Defendant "handcuff[ed] her too tightly" and "push[ed] her into a wall inside her home [with] greater force [than was] necessary." (Dkt. [31-1] at ¶¶ 55-56). Even if such allegations are true, they do not constitute excessive force as defined by the Eleventh Circuit in Nolin. The Eleventh Circuit requires much more for the use of force to be considered disproportionate and unreasonable. See Oliver v. Fiorino 586 F.3d 898, 901 (11th Cir. 2009) (holding that a police officers' alleged action of continuing to shock a pedestrian with an electroshock weapon at least seven times in a two-minute period, after shocking him initially as he struggled to free himself from an officer in the street, if proven, constituted

excessive force, where officers made no attempt to handcuff or arrest the pedestrian during the shock cycle, and the pedestrian, who later died as a result of the shocks, was not accused of or suspected of any crime, and posed no immediate threat to officers); Sanchez v. Hialeah Police Dept., 2009 WL 4829872 (11th Cir. 2009) (holding that a city police officer violated an arrestee's Fourth Amendment right to be free from excessive force when, after spraying the arrestee with mace, he repeatedly struck the arrestee on his head with a baton, where the arrestee had been arrested for a minor, non-violent crime, the arrestee did not pose a serious threat to anyone's safety, the arrestee did not attempt to escape, the arrestee was no longer resisting arrest at the time he was beaten, the arrestee was not given the opportunity to comply with instructions to get on the ground, and the arrestee suffered serious head injuries). Plaintiff's allegations that Defendant pushed Plaintiff into a wall while handcuffing her, pushed Plaintiff against the car while frisking her, and pushed her "front first into the rear of the car," although troubling if true, do not amount to the level of force the Eleventh Circuit has found to be excessive. (Dkt. [31-1] at ¶¶ 19, 25, 29). Thus, Plaintiff fails to establish a violation of her Fourth Amendment protection against the use of excessive force.

11

Because the Court finds that Plaintiff has not stated a constitutional claim for false arrest or excessive force, there is no need to address the second prong of the Eleventh Circuit's qualified immunity test for either §1983 claim. Because there was arguable probable cause for Defendant to arrest Plaintiff and since Defendant's use of force in arresting plaintiff did not, as a matter of law, amount to the level of force deemed unreasonably excessive by the Eleventh Circuit, Defendant is entitled to qualified immunity on Plaintiff's federal claims. See Wilson, 526 U.S. at 609; Harlow, 457 U.S. at 818.

### III.     State Law Claims and Official Immunity

Plaintiff also seeks damages against Defendant for state law claims of false arrest and false imprisonment. Officer Futo asserts that official immunity protects him from liability for these claims.

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

Ga. Const. art. 1, § 2, ¶ IX(d). Moreover,

> [The court interprets] the term "official function" to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under this definition, [the constitutional provision] provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts . . . .

Gilbert v. Richardson, 264 Ga. 744, 752-53, 452 S.E.2d 476, 483 (1994).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

Carter v. Glenn, 548 S.E.2d 110, 112-13 (Ga. Ct. App. 2001).

"[T]he decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer." Reed v. DeKalb County, 589 S.E.2d 584, 587 (Ga. Ct. App. 2003) (holding that an officer's decision to arrest a school principal for obstruction after she attempted to prevent the officer from arresting two students was protected under official immunity as the officer's decision was discretionary and done without malice). "Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity

13

still applies. Absent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed." Id. (internal citations omitted). Following these standards, the actions of Officer Futo in arresting Plaintiff for obstruction were discretionary acts. Id.

Therefore, Defendant is entitled to official immunity unless he acted with actual malice or intent to injure. Actual malice requires the deliberate intent to do wrong (i.e. express malice or malice in fact). See Peterson v. Baker, 504 F.3d 1331 (11th Cir. 2007). Moreover, actual malice requires more than harboring bad feelings about another, and ill will must be combined with the intent to do something wrongful or illegal. Id. While Plaintiff alleges that Defendant excessively cursed at her and used unreasonable force in arresting her, Plaintiff offers no evidence to show that it was Officer Futo's intent to do something wrong or illegal (Dkt. [31-1]). Without evidence of express malice, Defendant is entitled to official immunity as to Plaintiff's state law claims.

## Conclusion

For the aforementioned reasons, Defendant's motion for summary judgment is **GRANTED** and Defendant's Motion for Leave is **GRANTED**, *nunc pro tunc*.  The clerk shall close the case.

    **SO ORDERED**, this   24th   day of June, 2011.

                                          _____
                                          RICHARD W. STORY
                                          UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)